HAYNES, Circuit Judge,
concurring:
I generally concur with the majority’s resolution of this case. I write separately because my reasoning differs somewhat from that of the majority.
This case presents the potential for complied parties to create bad law. Here, while their uncle lay ill in a hospital room, two nephews went to court and, within the space of about a week, obtained orders that not only temporarily preserved Lewis’s estate, but also allowed them, essentially, to write a will for a man who arguably had not wanted to do so for himself despite his considerable wealth and advanced age. He died too soon for full proceedings regarding his competency to be conducted. The effect of the Louisiana proceeding was to cut out one niece from what otherwise would have been her inheritance. Of course, in this case, all indications are that the nephews acted with the full blessing of Caroline, the affected niece. But not all cases will involve such harmonious concerted action designed to avoid an unrelated party. One might view this case differently had Caroline been surreptitiously deprived of a $5 million inheritance right against her will by the last-minute machinations of competing heirs.
Either way, however, Louisiana law provides a remedy for the excluded former heir apparent or, arguably, her creditor. Under article 2004 of the Louisiana Code of Civil Procedure, a Louisiana trial court’s *682 judgment of homologation is subject to challenge in an action for annulment. La. Code Crv. Proo. akt. 2004 (2009). Specifically, Louisiana law allows interested parties, like Caroline or someone standing in her shoes, to seek annulment for up to one year from her discovery that a judgment was secured by ill practices. Under La. Code Civ. Proo. art. 2004, then, this case could have had a solid foundation from which a federal court could have reviewed the judgment of the Louisiana trial court. If it had a factual basis to do so, all the I.R.S. needed to do was bring an action for annulment under the Louisiana statute. That action arguably could have been filed in the federal district court under the broad “tax collection” grant of subject matter jurisdiction provided by 26 U.S.C. § 7402(a). But, as noted by the majority, the I.R.S. did not bring that case.
Instead, the I.R.S. has never raised La. Code Civ. Proc. art. 2004 as the foundation of this suit nor has it asked this court directly to annul the judgment of the Louisiana trial court for “ill practices” or otherwise. Instead, the I.R.S. brought this action for declaratory relief and injunction as a collateral attack on the ho-mologation judgment. Louisiana law expressly prohibits annulment under these circumstances. As discussed in the commentary to La. Code Civ. Proc. art. 2004, the Louisiana legislature has adopted the jurisprudential requirement that actions for annulment based on ill practices may not proceed by way of collateral attack. LaCode Civ. Proo. art. 2004, cmt. (d); see also Russland Enters., Inc. v. City of Gretna, 727 So.2d 1223 (La.Ct.App.1999) (holding La. Code Civ. Proo. art. 2004 actions must be brought as independent, direct suits). Instead, such an assault on a settled judgment must be brought as a direct action with the express purpose of securing nullification. Russland, 727 So.2d at 1226. As such, while we could have had a reasoned basis to review the state court’s judgment, we do not have such authority under the demand for declaratory and injunctive relief that the I.R.S. chose to pursue.
Accordingly, while my analysis is somewhat different, I concur in the result, and I join in affirming the judgment of the district court which dismissed this case with prejudice.